UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------- X
: 
MALIBU MEDIA, LLC, :
 :
 : Case No. 2:19-cv-02245-NIQA
              Plaintiff, :
v. :
 :
DENNIS MCOWEN, :
 :
              Defendant. :
---------------------------------------------------------------- X

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT DENNIS MCOWEN**

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel, and pursuant to Fed.R.Civ.P. 55, hereby files its Memorandum of Points and Authorities in Support of Motion for Entry of Default Judgment ("Motion") against Defendant, Dennis Mcowen ("Defendant"), and in support thereof, states:

**I.     INTRODUCTION**

Plaintiff seeks entry of default judgment against Defendant for failure to plead or otherwise defend against Plaintiff's Amended Complaint for direct copyright infringement of Plaintiff's motion picture works listed on Exhibit A attached hereto (the "Works") using the internet and the BitTorrent protocol.  Defendant, by reason of default, is taken to have conceded the truth of the factual allegations in the Amended Complaint.  Plaintiff, therefore, now seeks entry of default judgment by the Court awarding (a) statutory damages under the Copyright Act, (b) the costs incurred by Plaintiff in this action, and (c) injunctive relief to prevent further infringement by Defendant.

**II.     PROCEDURAL BACKGROUND**

1.     On May 22, 2019, Plaintiff filed the Complaint in this action.  [CM/ECF 1].

2. On June 12, 2019, Plaintiff filed its Motion for Leave to Serve Third Party Subpoenas Prior to Rule 26(f) Conference requesting the Court's authorization to serve discovery on the Doe Defendant's Internet Service Provider ("ISP") in order to learn the Defendant's true identity [CM/ECF 4]. The Court granted this motion on June 13, 2019 [CM/ECF 6].

3. Pursuant to the issuance of the third party subpoena, Defendant's ISP disclosed Defendant's true identity to Plaintiff. *See* Decl. of Christopher P. Fiore, Esq., Attached hereto as Exhibit B.

4. On October 04, 2019, Plaintiff filed its Amended Complaint in this action. [CM/ECF 11].

5. Plaintiff served Defendant Dennis Mcowen with a Summons and Amended Complaint on November 11, 2019. *See* Affidavit of Service [CM/ECF 12].

6. Defendant failed to plead or otherwise defend against Plaintiff's Amended Complaint.

7. On December 3, 2019, Plaintiff filed and served a request that the Clerk of the Court enter Defendant's default pursuant to Fed.R.Civ.P. 55(a). [CM/ECF 13].

8. Default was entered as to Defendant Dennis Mcowen on December 4, 2019.

9. Defendant is not a minor, incompetent person or in active military service. *See* Decl. of Christopher P. Fiore, Esq.

**III.   DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT**

    **A.   This Court has Subject Matter and Personal Jurisdiction**

This is a case for copyright infringement arising under United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). This Court has subject matter

jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

This Court has personal jurisdiction over the Defendant, a Pennsylvania resident, who was properly served via personal service. Under Pennsylvania Code Rule 402(a)(1), process may be served by handing a copy to the defendant. The Affidavit of Service [CM/ECF 12], describes that the process server gave a copy of the amended complaint and summons to the Defendant, Dennis Mcowen. In this case, all requirements for substitute service have been met.

### B. Entry of Default Judgment is Factually and Legally Appropriate

#### 1. Defendant's Default Concedes the Truth of the Facts Alleged in the Amended Complaint.

By defaulting, Defendant admitted the truth of the allegations of the Amended Complaint. *See, e.g., A&N Music Corp. v. Venezia*, 733 F. Supp. 955, 957 (E.D. Pa. 1990) (finding that because the defendant had failed to plead a default judgment was appropriate and that the averments of copyright infringement are deemed admitted based on defendant's default); *Kennedy v. Creditgo, LLC*, Civil Action No. 15-1790 (JBS-KMW), 2015 U.S. Dist. LEXIS 161461, at *3-4 (D.N.J. Dec. 2, 2015) ("Once a party has defaulted, the Court must treat the factual allegations as proven by the Plaintiff"); *Sony Music Entm't Inc. v. Elias*, 2004 WL 141959, at *3 (C.D. Cal. 2004) (action against user of on-line media distribution system; "[s]ince this Court has found that Defendant is in default, the factual allegations in Plaintiffs' complaint are deemed admitted."); *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002) ("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.") (internal quotation marks and citation omitted).

#### 2. Plaintiff's Allegations Are Factually and Legally Sufficient to Support its Claims of Copyright Infringement.

Plaintiff's allegations in the Amended Complaint support its copyright infringement claims.  It is well-settled that "[t]o establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991).

    a.  <u>Plaintiff Has Demonstrated Ownership of a Valid Copyright</u>

Plaintiff alleged that it is the owner of the copyrights.  *See* Amended Complaint CM/ECF 12 ¶¶ 3, 22, 29.  Defendant admitted this allegation by failing to plead or otherwise defend against Plaintiff's Amended Complaint.

Plaintiff, therefore, has met the first element.

    b.  <u>Plaintiff Has Demonstrated Direct Copyright Infringement by Defendant</u>

As to the second element, Plaintiff alleged that it has actionable claims for direct copyright infringement against Defendant based on Defendant's unauthorized use of the "BitTorrent" protocol to illegally download, reproduce, distribute, perform and display Plaintiff's Works.  *Id.* at ¶ 30.  Specifically, Plaintiff's Amended Complaint alleges that:

- The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing systems used for distributing large amounts of data, including . . . digital movie files.  *Id*. at ¶ 10.

- In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces.  Users then exchange these small pieces among each other[.]  *Id.* at ¶ 12.

- After the infringer receives all of the pieces of a digital media file, the infringer's BitTorrent client software reassembles the pieces so that the file may be opened and utilized.  *Id*. at ¶ 13.

- Plaintiff's investigator, IPP International UG, established a direct TCP/IP connection with the Defendant's IP address as set forth on Exhibit A. *Id*. at ¶ 17.

- Plaintiff's investigator downloaded from Defendant one or more pieces of each of the digital media files identified by the file hashes on Exhibit A. *Id*. at ¶ 18.

- Each digital media file as identified by the file hash listed on Exhibit A correlates to a copyrighted film owned by Plaintiff, as identified on Exhibit B. *Id*. at ¶ 19.

- A full copy of each digital media file was downloaded from the BitTorrent file distribution network, and it was confirmed through independent calculation that the file hash correlating to each file matched what is listed on Exhibit A. At no point was Plaintiff's copyrighted content uploaded to any other BitTorrent user. *Id*. at ¶ 20.

- Each digital media file as identified by the file hash listed on Exhibit A has been verified to contain a digital copy of a movie that is identical (or alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted work listed on Exhibit B. *Id*. at ¶ 21.

- By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit**.** *Id*. at ¶ 30.

- Plaintiff did not authorize, permit or consent to Defendant's distribution of its works. *Id*. at ¶ 31

- As a result of the foregoing, Defendant violated Plaintiff's exclusive [copy]right[s]. *Id*. at ¶ 32.

- Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2). *Id*. at ¶ 33.

Defendant's acts of infringement were committed with knowledge and willfulness. The very nature of the torrent platform evidences Defendant's intent to infringe copyrights. First, and

more obvious, getting a film for free, when a person would otherwise have to pay for it, evidences intent to bypass legitimate means to obtain that film. Accordingly, such conduct shows knowledge of copyright infringement. *See Arista Records, Inc. v. Becker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D.FL.2003) (stating that the sales price is good evidence that a defendant knew he was infringing copyrights when that sales price is well below the average retail price).

Second, this Court may infer that Defendant willfully infringed Plaintiff's copyrights because of Defendant's default. *See, e.g., Malibu Media, LLC v. Cui*, No. 13-5897, 2014 U.S. Dist. LEXIS 151340 at 5-6 (E.D. Pa. Oct. 24, 2014) ("Infringement is considered willful if, for example, the defendant fails to respond and default is entered or the defendant used BitTorrent protocol to gain access to a work for free that otherwise would have required payment."); *Arista Records, Inc. v. Beker Enters.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003); *Boost Worldwide, Inc. v. Summit City Check Cashing*, No. 5:11CV2466, 2012 U.S. Dist. LEXIS 39770, at *11 (N.D. Ohio Feb. 22, 2012) ("Willfulness can also be inferred from a defendant's default.").

Third, it is clear that downloading the particular torrent software is a willful act, in and of itself, particularly as that software's main purpose is to share unlicensed content. In the case of the torrent software, a substantial amount of technical configuration is required.

Fourth, it has been shown that the use of the BitTorrent protocol is primarily for the infringement of copyrights. As stated in a January 2010 study by a Princeton Senior Sauhard Sahi (under the supervision of Princeton Professor Ed Felton), about 99% of all files in BitTorrent were infringing copyrights (10 of the 1021 files were found to be likely non-infringing), with 100% of movie and television files found to be infringed content. See the article attached as Exhibit C entitled "99% of BitTorrent files pirated" by George Ou, posted on

http://www.digitalsociety.org/2010/01/princeton-study-99-of-bittorrent-files-pirated/. Indeed, "BitTorrent is to stealing movies, TV shows, music, videogames, and now books what bolt-cutters are to stealing bicycles."[1]

The International Federation for Phonographic Industry (IFPI), issued a thought provoking report entitled "Music, how, when and where you want it," attached as Exhibit E. On page 18, the IFPI provides statistics establishing that file sharers' primary motivation for their theft is the "lure of free:"

> A separate body of research helps explain why illegal file-sharing is having this impact on consumer behavior, confirming the main driver of piracy to be not better choice or quality, but the "lure of free". Researchers GFK found that "because it's free" was the main answer given among over 400 illegal filesharers in research unveiled in Sweden in July 2009. A study by Entertainment Media Research in the UK found that 71 per cent of those who admitted they increased their file-sharing activity in 2008 did so "because it's free". In Norway, research by Norstat in 2009 also found the most cited reason for illegal downloading from P2P services was "because it's free". Further studies came to broadly the same conclusion in Japan and Belgium in 2009.

Plaintiff has further alleged that Defendant formed part of a BitTorrent "swarm" infringing the copyrighted Works through the results of Plaintiff's forensic investigation. Specifically, Plaintiff has alleged that:

- In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces. Users then exchange these small pieces among each other[.] *See* Amended Complaint, ¶ 12.

- Each piece of a BitTorrent file is assigned a unique cryptographic hash value. *Id.* at ¶ 14.

- The BitTorrent protocol utilizes cryptographic hash values to ensure each piece is properly routed amongst BitTorrent users as they engage in file sharing. *Id.* at ¶ 15.

---

[1] *See Testimony of Scott Turow President of the Authors Guild Before the Senate Judiciary Committee* at http://www.judiciary.senate.gov/pdf/11-2-16%20Turow%20Testimony.pdf attached as Exhibit D.

- The entirety of the digital media file also has a unique cryptographic hash value . . . Once infringers complete downloading all pieces which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate. *Id.* at ¶ 16.

- Plaintiff's investigator downloaded from Defendant one or more pieces of each of the digital media files identified by the file hashes listed on Exhibit A. *Id.* at ¶ 18.

- A full copy of each digital media file was downloaded from the BitTorrent file distribution network and it was confirmed through independent calculation that the file hash correlating to each file matched what is listed on Exhibit A. *Id.* at ¶ 20.

- Plaintiff's investigator connected, over a course of time, with Defendant's IP address for each digital media file identified by the hash value as listed on Exhibit A. The most recent TCP/IP connection between IPP and the Defendant's IP address for each file hash listed in Exhibit A is included within the column labeled Hit Date UTC. *Id.* at ¶ 24.

By defaulting, Defendant has conceded the truth of the foregoing allegations *A&N Music Corp. v. Venezia* at 957.

Courts have held that using file-sharing software and protocols, such as BitTorrent, to download copyrighted works and reproduce, distribute, display or perform them without permission of the copyright holder constitutes copyright infringement. *See, e.g., Malibu Media, LLC v. Flanagan*, No. 2:13-CV-5890, 2014 U.S. Dist. LEXIS 89224, 2014 WL 2957701, at *6 (E.D. Pa. July 1, 2014) (finding plaintiff entitled to default judgment on copyright infringement based on use of BitTorrent); *Virgin Records America, Inc. v. Bagan*, 2009 WL 2170153, at *3 (D.N.J. 2009) (holding that "using P2P network software to download copyrighted recordings and distribute them over the network without permission of the copyright holder constitutes copyright infringement"); *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 489-96, 497-501 (1st Cir. 2011) (finding copyright infringement where file-sharing software was used to

download and distribute media); *BMG Music v. Gonzalez*, 430 F.3d 888, 890-91 (7th Cir. 2005) (downloading copyrighted works through peer-to-peer networks is not fair use).

By downloading the Works and reproducing, distributing, displaying or performing it using the BitTorrent protocol, Defendant has infringed Plaintiffs' copyright on these Works. *See* 17 U.S.C. § 106. Based upon these admitted allegations, Plaintiff has established grounds to impose liability on Defendant for direct copyright infringement.

   c. **Statutory Damages Should be Awarded to Plaintiff**

Plaintiff hereby elects to recover statutory damages against Defendant as provided by 17 U.S.C. § 504.[2] Section 504(a) of the Copyright Act provides that "an infringer of copyright is liable for . . . (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a)(2). For unintentional infringement, 17 U.S.C. § 504(c) provides that "the copyright owner may . . . recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). This is not unintentional infringement, however, and pursuant to 17 U.S.C. § 504(c)(2), the Court upon a finding of willful infringement may "increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Here, Plaintiff pled that Defendant's infringement was committed willfully. *See* Amended Complaint, ¶ 33. Therefore, a statutory damages award up to $150,000 would be appropriate.

---

[2] Plaintiff need not prove actual damages to be entitled to an award of statutory damages, and may make an election of statutory damages "regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of [D]efendant's profits." *Columbia Pictures Television, Inc., v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127, 112 S.Ct. 1063 (2002).

Significantly, legislative history demonstrates that Congress, recognizing the likelihood of widespread infringement through the internet, specifically amended the Copyright Act through the Digital Theft Deterrence Act of 1999 to increase the penalties for copyright infringement:

> By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works. The advent of digital video discs, for example, will enable individuals to store far more material than on conventional discs and, at the same time, produce perfect secondhand copies . . . <u>Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct</u>. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action. In light of this disturbing trend, <u>it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct</u>. H.R. 1761 increases copyright penalties to have a significant deterrent effect on copyright infringement.

H.R. Rep. No. 106-216, at 3 (1999) (Emphasis added).

Here, despite the fact of Defendant's willful infringement, Plaintiff seeks an award of $6,000.00 in statutory damages ($1,500.00 per work, which is 2x the minimum statutory damages). *See e.g., Malibu Media, LLC v. Flanagan* at *10-11 ($1,500.00 per infringement found reasonable to deter future infringements as well as compensate the Plaintiff); *PHE, Inc. v. Does 1-122*, 2014 U.S. Dist. LEXIS 62895, 2014 WL 1856755, at *3 (N.D. Ill. May 7, 2014) ($1,500.00 per infringed work was found reasonable); *Malibu Media, LLC v. Brenneman*, 2013 U.S. Dist. LEXIS 174641, 2013 WL 6560387, at *3 (N.D. Ind. Dec. 13, 2013) (Court found damages award of $1,500.00 per infringed work will suffice to compensate Plaintiff and deter future infringement.); *Malibu Media, LLC v. Cowham*, 2014 U.S. Dist. LEXIS 74649, 2014 WL 2453027, at *2 (N.D. Ind. June 2, 2014)($1,500.00 per infringed work was found reasonable.);

10

*Malibu Media, LLC v. Goodrich*, 2013 U.S. Dist. LEXIS 177353, 2013 WL 6670236, at *11 (D. Colo. Dec. 18, 2013) ($2,250.00 per infringed work was found reasonable.).  This amount is reasonable when considering that Plaintiff's actual damages far exceed this sum.  To explain, Defendant materially aided each of the other participants in the BitTorrent swarm of infringers.  This swarm contained thousands of peers and continues to grow.  Plaintiff's actual damages are the lost sales of its content to those thousands of infringers.  In the aggregate, these lost sales far exceed $6,000.00.[3]

Courts routinely award statutory damages in an amount equal to $30,000 for intentional online copyright infringement per work on default judgment.  *See, e.g., Achte/Neunte Boll King Beteiligungs GMBH & Co KG v. Palmer,* 2011 WL 4632597, at *1-2 (M.D. Fla. 2011) (on default judgment, awarding $30,000 statutory damages for online infringement); *Liberty Media Holdings, Inc. v. Quynn Alan Phillips*, *Everette v. Astrue*, No. 3:11-cv-00029-JAH-JMA, ECF No. 12 (S.D. Cal. June 6, 2011) (same); *Getaped.com, Inc. v Cangemi*, 188 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2002) (same).

Here, the Court should thus award statutory damages of $6,000.00 to Plaintiff because said amount is reasonable and appropriate based on each Defendant's multiple willful infringements, and the legislative intent behind the Digital Theft Deterrence Act of 1999.

    d.    **<u>Injunctive Relief Should be Awarded to Plaintiff</u>**

Permanent injunctive relief should be awarded to Plaintiff.  Plaintiff seeks an injunction:

> (A)   Permanently enjoin[ing] Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted Works;

---

[3] Because Plaintiff here seeks only statutory damages within the range requested in the Complaint, no evidentiary hearing is necessary. *See, e.g., Broad. Music, Inc. v. Spring Mt. Area Bavarian Resort, LTD*, 555 F. Supp. 2d 537, 544 (E.D. Pa. 2008) ("In default judgment cases, courts can order the minimum statutory damages without conducting a hearing."); *Kennedy v. Creditgo, LLC* at *9 (In the context of default judgment cases, courts can award the minimum statutory damages without conducting a hearing[.]").

>    (B)   Order[ing] that Defendant delete and permanently remove the digital media files relating to Plaintiff's Works from each of the computers under such Defendant's possession, custody or control; [and]
>
>    (C)   Order[ing] that Defendant delete and permanently remove the infringing copies of the Works Defendant has on the computers under Defendant's possession, custody or control . . .

Amended Complaint, at p. 8, ¶ (A)-(C).

Permanent injunctive relief to prevent or restrain copyright infringement is authorized under the Copyright Act. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."). The Copyright Act further provides that "the court may order the destruction . . . of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . . [.]" 17 U.S.C. § 503(b).

A plaintiff seeking a permanent injunction "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). Here, Plaintiff has plainly demonstrated each of these factors.

Addressing the first and second factors, Plaintiff has demonstrated that absent an injunction, Defendant will continue to cause Plaintiff irreparable injury that cannot fully be compensated or measured in money. Specifically, Plaintiff has established that Defendant's

conduct has exposed the Works to "viral" infringement using the BitTorrent protocol, in which users in a BitTorrent "swarm" simultaneously upload and download the Works between and among innumerable other users.  By virtue of the workings of the BitTorrent protocol, a "seeder" of the copyrighted Work distributes the whole, or portions of, the Work to other recipient peer users, who in turn deliver the whole or portion of the Work to other users in the "swarm."  Thus, absent injunctive relief to force the deletion of each torrent file or copy of the Works from Defendant's computers (and from the computers of those persons utilizing the BitTorrent protocol in active concert or participation with Defendants), infringement of the Works can continue unabated in exponential fashion.  Monetary damages, therefore, are inadequate to compensate Plaintiff for such irreparable injury, as Defendant continues, and will continue, to harm Plaintiff on a daily basis.  See *A & N Music Corp. v. Venezia*, 733 F. Supp. 955, 958 (E.D. Pa. 1990) ("When past infringement and a substantial likelihood of future infringements is established, a copyright holder is ordinarily entitled to a permanent injunction against the infringer."); *Microsoft Corp. v. Big Boy Distribution LLC*, 589 F.Supp.2d 1308, 1321 (S.D. Fla. 2008) ("Generally, a showing of copyright infringement liability and threat of future violations is sufficient to warrant entry of a permanent injunction.").

Considering the balance of hardships between Plaintiff and Defendant, the Defendant "will not be harmed by an injunction preventing his continued unlawful behavior." *Malibu Media, LLC v. Powell*, No. 1:15-CV-1211, 2016 U.S. Dist. LEXIS 273 at *4 (M.D. Pa. Jan. 4, 2016).  "The only hardship imposed upon the Defendant is that they obey the law." *Coach, Inc. v. Ocean Point Gifts*, Civil Action No. 09-4215 (JBS), 2010 U.S. Dist. LEXIS 59003, at *24 (D.N.J. June 14, 2010).  Further, "any injury to [Defendants] caused by the . . . injunction would be a result of [Defendants] ceasing the allegedly infringing conduct."  *Medias & Co., Inc. v. Ty,*

*Inc.*, 106 F.Supp.2d 1132, 1140 (D. Colo. 2000). Hence, "this merits little equitable consideration." *Id*. Consequently, the balance of hardships weighs in Plaintiff's favor.

Finally, Plaintiff's prevention of copyright infringement is in the public interest because "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp*., 714 F.2d 1240, 1255 (3d Cir. 1983).

Courts routinely issue injunctive relief as part of a default judgment where, as here, an online media distribution system was used to download and distribute copyrighted works without permission. *See, e.g., Malibu Media, LLC v. Flanagan*, No. 2:13-CV-5890, 2014 U.S. Dist. LEXIS 89224 at *13 (E.D. Pa. June 30, 2014) ("Injunctions are appropriate against Defendants who have engaged in unlawful downloads to ensure the misconduct does not recur."); *Warner Bros. Records, Inc., v. Novak*, 2007 WL 1381748, at *2-3 (D.N.J. 2007) (holding that a permanent injunction enjoining defendants from infringing on plaintiffs' copyrighted sound recordings "is appropriate and reasonable given [d]efendant's continuing infringement on [p]laintiff's sound recordings, and [d]efendant's failure to respond"); *Axact (PVT), Ltd. v. Student Network Resources, Inc.*, 2008 WL 4754907, at *3 (D.N.J. 2008) (granting injunctive relief to defendants on default judgment of copyright infringement claims of academic works and term papers).

Plaintiff, therefore, has demonstrated that it has suffered irreparable harm, and that remedies at law are inadequate. A permanent injunction is appropriate as it will cause no harm to Defendant, and such relief will be in the public interest. Therefore, Court should thus grant Plaintiff the requested injunctive relief.

e. **Costs of Suit Should be Awarded to Plaintiff**

Plaintiff is entitled to recovery of its costs of suit incurred in this action. Section 505 of the Copyright Act expressly authorizes recovery of "full costs by or against any party other than the United States or an officer thereof," and further provides for an "award [of] a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505.

Courts routinely award costs to prevailing plaintiffs on default judgment, and especially when the infringement is willful. *See, e.g., A&N Music Corp. v. Venezia* at 958-59 (awarding costs and attorneys' fees where defendants "knowingly infringed" upon plaintiff's copyrights, and "failed to appear before [the] court to offer an explanation for his conduct"); *Axact (PVT), Ltd. v. Student Network Resources*, 2008 WL 4754907, at *3 (D.N.J. 2008) ("Indeed, it has often been held that attorney's fees are awarded to prevailing copyright plaintiffs 'generally' or 'ordinarily.'") (*citing Rural Telephone Service Co., Inc. v. Feist Pubs., Inc.*, 1992 WL 160890, at *3 (D. Kan. 1992).

In this case, the declaration of Plaintiff's counsel states that Plaintiff has incurred $621.63 in costs. *See* Decl. of Christopher P. Fiore, Esq. Defendant in this case was not acting innocently when infringing Plaintiff's copyrighted Works using the BitTorrent protocol. As established by Plaintiff, Defendant's infringements were committed "willfully" under the Copyright Act, and Defendant's failure to respond to the Amended Complaint further demonstrates an unwillingness to respect applicable law. Amended Complaint, ¶ 33.

Accordingly, Plaintiff should be allowed recovery of its costs and attorneys' fees incurred in this action.

IV. **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests entry of a default judgment in favor of Plaintiff and against Defendant, in the form of the Proposed Default Judgment and Permanent Injunction attached hereto.

**WHEREFORE**, Plaintiff, Malibu Media, LLC, respectfully requests that this Honorable Court enter a default judgment in favor of Plaintiff and against Defendant Dennis Mcowen:

(A)     Awarding Plaintiff statutory damages in the amount of $6,000.00 pursuant to 17 U.S.C. § 504(c)(1);

(B)     Awarding Plaintiff its reasonable costs of $621.63 pursuant to 17 U.S.C.  § 505;

(C)     Permanently enjoining Defendant from directly, contributorily or indirectly infringing Plaintiff's rights under federal or state law of Plaintiff's copyrighted works" (the "Works"), including, without limitation, by using the internet, BitTorrent or any other online media distribution system to reproduce (e.g., download) or distribute the Works, or to make the Works available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff;

(D)     Ordering that Defendant destroy all copies of Plaintiff's Works that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization, and shall destroy all copies of the Works transferred onto any physical medium or device in Defendant's possession, custody, or control; and

(E)     Granting Plaintiff any other and further relief this Court deems just and proper.

Dated: December 5, 2019

Respectfully submitted,

FIORE & BARBER, LLC

By:   /s/ *Christopher P. Fiore*

Christopher P. Fiore, Esquire
418 Main Street, Suite 100
Harleysville, PA 19438
Tel: (215) 256-0205
Fax: (215) 256-9205
Email:  cfiore@fiorebarber.com
PA Attorney ID: 83018
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

I further certify that some of the participants in the case are not CM/ECF users.  I have mailed the foregoing document via U.S. Mail to the persons set forth in the Service List below.

By: /s/ *Christopher P. Fiore*

**Service List**
Dennis Mcowen
1401 Peach Tree Lane
Philadelphia, PA 19111.